# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03004-CNS-KAS

WOODLEY ARCHITECTURAL GROUP, INC.,

      Plaintiff,

v.

LOKAL COMMUNITIES, LLC, LOKAL HOMES, LLC,
L&L HOLDING COMPANY, LLC, FLAGSTAR BANK,
NATIONAL ASSOCIATION f/k/a FLAGSTAR BANK, FSB,
and WESTERN ALLIANCE BANK,

      Defendants.

_____

LOKAL COMMUNITIES, LLC, LOKAL HOMES, LLC
L&L HOLDING COMPANY, LLC

      Counterclaimants,

v.

WOODLEY ARCHITECTURAL GROUP, INC.,

      Counter-Defendant.

---

## LOKAL DEFENDANTS' AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS

---

      Defendants Lokal Communities, LLC ("Lokal Communities"), Lokal Homes, LLC ("Lokal Homes"), and L&L Holding Company, LLC ("L&L") (collectively, the "Lokal Defendants") submitted their Answer to the First Amended Complaint and Counterclaims on January 13, 2025, (ECF 93). Lokal Defendants hereby submit this Amended Answer to First Amended Complaint and Amended Counterclaims ("Amended Answer") pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).

## AMENDED ANSWER TO FIRST AMENDED COMPLAINT

Through the sections and numbered paragraphs below, Lokal Defendants

respond to the corresponding titled sections and numbered paragraphs within the First

Amended Complaint ("FAC," ECF 57):

## PARTIES[1]

1.      Defendant is without sufficient knowledge and information to admit or deny

the allegations of this Paragraph and on that basis denies them.

2.      Lokal Defendants admit Lokal Communities is a Colorado limited liability

company with its principal place of business in Greenwood Village, Colorado rather than

Englewood, Colorado and admit it has appeared and answered in this case.

3.      Lokal Defendants admit Lokal Homes is a Colorado limited liability

company with its principal place of business in Greenwood Village, Colorado rather than

Colorado Springs, Colorado and deny the remaining allegations in this paragraph.

4.      Lokal Defendants admit L&L is a Colorado limited liability company with its

principal place of business in Greenwood Village, Colorado and deny the remaining

allegations in this paragraph.

5.      Lokal Defendants admit that Defendant Flagstar Bank ("Flagstar") is a

banking corporation.  Lokal Defendants lack sufficient knowledge or information to form

a belief as to the truth of the remaining allegations in this Paragraph, and on that basis,

deny them.

---

[1] Lokal Defendants use the section titles Plaintiff used within the FAC for reference only.
Such use is not an admission as to the truth of the section titles.

4902-6814-5174

6.      Lokal Defendants admit Western Alliance Bank ("WAB") has a headquarters in Arizona.  Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph, and on that basis, deny them.

## JURISDICTION AND VENUE

7.      Lokal Defendants admit Plaintiff alleges copyright infringement under 17 U.S.C. §§ 101 et. seq.  Lokal Defendants deny any infringement, liability and any wrongdoing.  The allegation in this paragraph is a legal conclusion which requires no response.

8.      Lokal Defendants do not contest subject matter jurisdiction at this time.

9.      Lokal Defendants do not contest personal jurisdiction at this time.

10.      Lokal Defendants do not contest venue at this time.

## BACKGROUND

11.      Lokal Defendants admit the FAC concerns two Colorado Springs, Colorado communities known as "Commons at Victory Ridge" ("CVR") and "Centennial and Fillmore" ("C&F") and deny the remaining allegations in this Paragraph.

## WAGI

12.      Lokal Defendants admit that Plaintiff Woodley Architectural Group, Inc. ("WAGI") is an architecture firm, but are without sufficient knowledge and information to form a belief as to the remaining allegations in this Paragraph, and on that basis, deny them.

4902-6814-5174

13.     Lokal Defendants are without sufficient knowledge and information to admit or deny the allegations in this Paragraph, and on that basis, deny them.

**<u>LOKAL PARTIES</u>**

14.     Lokal Defendants admit that Lokal Communities works on real estate projects, but deny the remaining allegations in this paragraph.

15.     Lokal Defendants admit Lokal Communities is the developer of the CVR and C&F projects.

16.     Lokal Defendants admit Lokal Communities has had a direct financial interest in the CVR and C&F projects and deny the remaining allegations in this paragraph.

17.     Lokal Defendants deny the allegations in this Paragraph.

18.     Lokal Defendants admit Lokal Homes is a homebuilding company.

19.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the document and deny the remaining allegations in this Paragraph.

20.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the document and deny the remaining allegations in this Paragraph.

21.     Admitted.

22.     Admitted.

23.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

24.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

25.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

26.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

27.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the document and deny the remaining allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

28.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the document and deny the remaining allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

29.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the

4902-6814-5174

document and deny the remaining allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

30.    Lokal Defendants admit Nic Fleming was an employee of Lokal Homes with the job title of "Director of Architecture" but deny the remaining allegations in this Paragraph.

31.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

32.    Lokal Defendants admit Nic Fleming was not licensed as an architect during his employment at Lokal Homes but are without sufficient knowledge or information to form a belief as to the remaining allegations in this Paragraph, and on that basis, deny them.

**<u>LENDERS</u>**

33.    Admitted.

34.    Lokal Defendants admit WAB is a bank with whom they have had banking arrangements and state that the documents referenced in this Paragraph speak for themselves, and therefore, deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents; and deny the remaining allegations in this Paragraph.

35.    The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the remaining allegations in this Paragraph.

36.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

37.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

38.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

39.     This Paragraph incorporates quoted language from unidentified documents.  Those documents speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

40.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that

7

document and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

41.    The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that document and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

42.    The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that document and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

43.    The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that document and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

44.    Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

45.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

46.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

47.     Lokal Defendants admit Flagstar is a federally insured financial institution.

48.     Lokal Defendants admit Flagstar is a bank with whom they have had banking arrangements.  The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that document and deny the remaining allegations in this Paragraph.

49.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the remaining allegations in this Paragraph.

50.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

4902-6814-5174

51.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

52.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

53.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

54.     The documents referenced in this Paragraph speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response.

55.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

56.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

57.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

## THE WAGI-LOKAL HOMES RELATIONSHIP

58.     Lokal Defendants admit that WAGI collaborated with Lokal Communities on concept design services related to high density townhome designs for use by Lokal Communities for a potential project at Evans and Holly, also known as the Hub at Virginia Village ("Hub at Virginia Village Project") in Denver, Colorado but deny the remaining allegations of this paragraph.

59.     Lokal Defendants admit Lokal Homes received a form draft Proposal and Agreement for Architectural Services from WAGI for the Hub at Virginia Village Project only that was never signed by Lokal Defendants and Lokal Defendants deny all other allegations in this Paragraph.

60.     Denied.

11

61.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

62.     Lokal Defendants admit payment was made to WAGI for the Hub at Virginia Village Project by Lokal Communities but deny the existence of a formal written agreement and deny the remaining allegations in this Paragraph.

63.     Lokal Defendants admit Lokal Homes received a form draft Proposal and Agreement for Architectural Services from WAGI for the Hub at Virginia Village Project that was never signed by Lokal Defendants and deny the remaining allegations in this Paragraph.

64.     Denied.

65.     Lokal Defendants deny that they and Plaintiff had a written engagement. Lokal Defendants admit that WAGI participated in a collaborative design charrette on December 18, 2018 (which was a workshop between Lokal Homes and WAGI) and that plans for the Hub at Virginia Village Project were jointly discussed and modified, and that WAGI refers to such floorplan drawings as "Carriage Town | Plan One," Carriage Town | Plan Two," "Rowtown | Plan one," "Rowtown | Plan Two," and "Rowtown | Plan Three".  Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and on that basis deny them.

66.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

4902-6814-5174

67.     Lokal Defendants deny the existence of a signed license agreement, deny there was an agreed-upon license fee, and deny it did not express any dissatisfaction with WAGI's work.  Lokal Defendants admit WAGI sent at least two invoices to Lokal Homes and that Lokal Communities paid $97,080.44 to WAGI and Lokal Communities paid $82,574.78 to WAGI, totaling $179,655.22, but Lokal Defendants deny the remaining allegations in this Paragraph.

68.     Lokal Defendants admit that five floorplans were created without WAGI's participation, namely, "Henry," "Oliver," "Taylor," "Clark," and "Baxter."  Lokal Defendants deny the allegations of this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any infringement thereof.

69.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use designs it used at the Hub at Virginia Village Project or elsewhere and deny any infringement.

70.     Lokal Defendants admit they constructed buildings at the Hub at Virginia Village Project and admit they used their "Henry," "Oliver," "Taylor," "Clark," and "Baxter" floorplans and deny the remaining allegations in this Paragraph.

71.     Lokal Defendants admit that prior to the construction on the Hub at Virginia Village Project being completed, that project was entered in the 2021 Major Achievements in Merchandising Excellence ("MAME") Awards competition for Denver

metro area, and that WAGI was listed along with Lokal Studio as "ASSOCIATE – ad agency, architect, interiors, designer" in the MAME application, but deny the remaining allegations in this Paragraph.

72.     Lokal Defendants admit that floorplans and exterior photographs of their "Henry," "Oliver," "Taylor," "Clark," and "Baxter" townhouses from the Hub at Virginia Village Project were submitted in connection with the 2021 MAME entry, but deny the remaining allegations in this Paragraph.

73.     Lokal Defendants admit submitting a 2021 MAME entry form; that document speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with that document; and deny the remaining allegations in this Paragraph.

74.     Lokal Defendants admit that the following statement was provided in connection with their 2021 MAME entry for the Hub at Virginia Village Project, but deny the remaining allegations in this Paragraph:

> This community has presented numerous challenges and opportunities. Being an urban infill location in Virginia Village in Denver, CO, this community has been of heavy interest since we purchased the land. The challenge of putting the puzzle together and figuring out how to best design this site has allowed us to bring the very best to our customers. Working with our award-winning architectural partner and our own in-house studio, we have expertly crafted the perfect mix of product for this community. Featuring two product lines, row townhomes, and back-to back cluster style townhomes, there is truly something for everyone. These floor plans include generous outdoor patios, open layouts, and functional design. The floor plans live like a single-family home and every detail was intentional. Things like floor plans featuring first floor studio suites are details that make sense for this location and demographic. Buyers can use it as an in-law suite or even a short- term rental to generate extra income. There is no shortage of desirable features for these buyers, including 2-car attached garages on all floor plans. Our team was able to identify what is important and flawlessly integrate it into each floor plan in a unique way.

75.     Lokal Defendants admit that the phrase "award-winning architectural partner" was a reference to WAGI, but deny that WAGI was the actual architect on the project and deny the remaining allegations in this Paragraph.

76.     The document referenced in this Paragraph speaks for itself, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with the document.  Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this Paragraph, and on that basis, deny them.

77.     Lokal Defendants admit that Mr. Lemnah accepted the award at the MAME Awards ceremony and that Mike Woodley appeared with Mr. Lemnah at the MAME Awards ceremony; but is without sufficient knowledge and information to admit or deny the remaining allegations in this Paragraph.

## **LOKAL REUSED THE LOKAL DERIVATIVES**

78.     Lokal Defendants admit that on October 27, 2021 Nic Fleming contacted WAGI architect Graham Denton and deny a reuse fee was required or requested and deny the remaining allegations in this Paragraph.

79.     Lokal Defendants admit that the names of the two communities, CVR and C&F, are accurate but deny the remaining allegations in this Paragraph.

80.     Denied.

81.     Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

82.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use designs it used in connection with CVR or C&F and deny any infringement.

83.     Lokal Defendants admit that in late 2021, Mr. Lemnah contacted Mr. Woodley and expressed a desire to "get square" regarding a separate project wherein Mr. Woodley was working on Mr. Lemnah's personal residence and also discussed WAGI's desire for indemnification from Lokal Defendants for the WAGI plans, but deny that Mr. Lemnah discussed or agreed to a reuse fee with WAGI and deny the remaining allegations of this Paragraph.

84.     Lokal Defendants admit that in early 2022 and through late summer 2022, Lokal Communities exchanged correspondences with WAGI, but deny any formal proposal was signed and deny authorization from WAGI was needed for the "two Colorado Springs projects" and deny the remaining allegations in this Paragraph.

85.     Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and

4902-6814-5174

deny any obligation to seek authorization to use designs it used in connection with CVR or C&F and deny any infringement.

86.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use, create or distribute designs it used in connection with CVR or C&F and deny any infringement.

87.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use, create or distribute designs it used in connection with CVR or C&F and deny any infringement.

88.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use, create or distribute designs it used in connection with CVR or C&F and deny any infringement.

89.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion regarding derivative works, which requires no response, and further deny that Plaintiff owns any original, enforceable copyrights and deny any obligation to seek authorization to use, create or distribute designs it used in connection with CVR or C&F and deny any infringement.

4902-6814-5174

90.     Lokal Defendants admit Lokal Communities had a financial interest in the "Colorado Springs" projects and deny the remaining allegations in this Paragraph.

91.     Lokal Defendants admit WAGI sent communications to Lokal Homes on June 28, 2022 and August 8-10, 2022.  Those communications speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny any legal need to obtain and pay for licenses from WAGI and deny the remaining allegations in this Paragraph.

92.     Lokal Defendants admit that an attorney representing Lokal Communities wrote a letter dated August 17, 2022, stating that "Woodley is attempting to enforce contracts that do not exist."  Those communications speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny any legal need to obtain and pay for licenses from WAGI and deny the remaining allegations in this Paragraph.

93.     Lokal Defendants admit that an attorney representing WAGI sent a letter dated August 22, 2022.  Those communications speak for themselves, and therefore, Lokal Defendants deny all allegations in this paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny any legal need to obtain and pay for licenses from WAGI and deny the remaining allegations in this Paragraph.

94.     Lokal Defendants admit receiving a letter from WAGI's attorney dated August 22, 2022.  Those communications speak for themselves, and therefore, Lokal Defendants deny all further acts of copyright infringement, including but not limited allegations in this Paragraph to the extent such allegations mischaracterize, misconstrue, or are otherwise inconsistent with those documents and deny any legal need to obtain and pay for licenses from WAGI and deny the remaining allegations in this Paragraph.

95.     Lokal Defendants admit that Lokal Communities has constructed townhouses at the CVR and C&F, but deny WAGI is entitled to any enforceable, original copyrights and deny any wrongdoing, deny any infringement and any obligation to cease and desist, and deny the remaining allegations in this Paragraph.

96.     Lokal Defendants admit that Lokal Communities has constructed townhouses at CVR and C&F but deny the remaining allegations in this Paragraph.

97.     Lokal Defendants admit that Lokal Communities has constructed townhouses at CVR and C&F but deny the remaining allegations in this Paragraph.

98.     Lokal Defendants admit that Lokal Communities has constructed townhouses at CVR and C&F but deny the remaining allegations in this Paragraph.

99.     Denied.

100.    Denied.

101.    Denied.

19

102.    Lokal Defendants admit that Lokal Communities has a direct financial interest in the CVR and C&F projects but deny the remaining allegations in this Paragraph.

103.    Lokal Defendants admit that townhouses named "Henry," "Oliver," "Taylor," "Clark," and "Baxter" are advertised in connection with the CVR and C&F projects on the website at <lokalhomes.com> but deny the remaining allegations in this Paragraph.

104.    Lokal Defendants admit that townhouses named "Henry," "Oliver," "Taylor," "Clark," and "Baxter" are advertised in connection with the CVR and C&F projects on the website at <lokalhomes.com> but deny the remaining allegations in this Paragraph.

105.    Lokal Defendants admit Lokal Communities has sold and is continuing to sell townhouses named "Henry," "Oliver," "Taylor," "Clark," and "Baxter" at the CVR and C&F projects but deny any infringement and deny the remaining allegations in this Paragraph.

## **WORKS IN SUIT**

106.    Lokal Defendants admit that WAGI is the listed copyright claimant for Certificate of Registration VA2000346599 titled "Rowtowns and Carriage 5-Plex" (the "Copyright") but deny the remaining allegations in this Paragraph.

107.    Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

4902-6814-5174

108.    Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

109.    Lokal Defendants deny that the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff is the owner of any original, enforceable works therein, deny the validity of the works at issue, deny any substantial similarity thereto, and deny the remaining allegations in this Paragraph.

110.    Denied.

111.    Lokal Defendants deny that the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff's purported work is "wholly original," and deny the remaining allegations in this Paragraph.

112.    Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of Exhibit A to the FAC, and on that basis, deny the allegations in this Paragraph.

113.    Lokal Defendants deny that WAGI's purported "creative decisions" result in original, enforceable copyright protection to the exclusion of third parties, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the allegations in this Paragraph.

21

114.    Lokal Defendants deny that WAGI's purported "putting together all of the pieces and shapes that make up each of the WAGI Townhouse Designs" result in original, enforceable copyright protection to the exclusion of third parties, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

115.    Lokal Defendants deny that WAGI's purported "hard work, imagination and creativity of Woodley and WAGI" described in this Paragraph result in original, enforceable copyright protection to the exclusion of third parties, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test and as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

116.    Lokal Defendants deny that WAGI's purported "creative decisions" result in original, enforceable copyright protection to the exclusion of third parties, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

117.    Lokal Defendants deny that WAGI's purported "creative decisions" result in original, enforceable copyright protection to the exclusion of third parties, deny that

WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

118.    Lokal Defendants deny that WAGI's "creative decisions" are non-functional, deny that WAGI's purported "creative decisions" result in original, enforceable copyright protection to the exclusion of third parties, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

119.    Lokal Defendants deny that WAGI's purported "creative decisions" are non-functional, deny any originality, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense and/or functionality test, deny any substantial similarity, and deny the remaining allegations in this Paragraph.

120.    Lokal Defendants deny that WAGI's purported "creative decisions" are non-generic, deny any originality, deny that WAGI's copyright/purportedly creative elements in this Paragraph are capable of surviving an Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense

and/or functionality test, deny any substantial similarity, and deny the remaining

allegations in this Paragraph.

## <u>COUNT I: COPYRIGHT INFRINGEMENT</u>
### (17 U.S.C. §§501 *et seq.*)

121.    Lokal Defendants incorporate by reference all of the above paragraphs as

though fully stated herein.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.  Plaintiff has suffered no damage; there has been no

infringement; and Plaintiff's purported rights cannot survive the application of the

Abstraction Filtration Comparison test further expressed in Lokal Defendants' First

Affirmative Defense.

132.    Denied.  Because there can be no infringement or damages under the

Abstraction Filtration Comparison test further expressed in Lokal Defendants' First

Affirmative Defense, among other things, Plaintiff shall not be entitled to recover from

Lokal Defendants.

4902-6814-5174

133.    Denied.  Because there can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, among other things, there can be no vicarious liability for infringement.

134.    Denied.  Because there can be no infringement or damages in this case under the Abstraction Filtration Comparison test, as further expressed in Lokal Defendants' First Affirmative Defense, there can be no contributory liability.

135.    Denied.  Because there can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, among other things, there can be no vicarious liability for infringement.

136.    Denied.  Because there can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, there can be no contributory liability.

137.    Denied.  There can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, and therefore there can be no contributory liability.

138.    Denied.  There can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense. Therefore, there can be no vicarious liability for infringement.

139.    The allegations in this Paragraph are not directed at Lokal Defendants and call for legal conclusions, and therefore, no response is required.  To the extent a response is required, Lokal Defendants deny the allegations.

140.    The allegations in this Paragraph are not directed at Lokal Defendants and call for legal conclusions, and therefore, no response is required.  To the extent a response is required, Lokal Defendants deny the allegations.

141.    The allegations in this Paragraph are not directed at Lokal Defendants and call for legal conclusions, and therefore, no response is required.  To the extent a response is required, Lokal Defendants deny the allegations.

142.    The allegations in this Paragraph are not directed at Lokal Defendants and call for legal conclusions, and therefore, no response is required.  To the extent a response is required, Lokal Defendants deny the allegations.

143.    Denied.  There can be no infringement or damages in this case under the Abstraction Filtration Comparison test as further expressed in Lokal Defendants' First Affirmative Defense, and therefore there can be no joint and several liability.

144.    Denied.

145.    Denied.

## COUNT II: CONDITIONAL DEMAND FOR ACCOUNTING

146.    Lokal Defendants incorporate by reference all of the above paragraphs as though fully stated herein.

147.    Lokal Defendants admit that the original answer asserted joint authorship and deny the remaining allegations in this Paragraph.

148.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff is entitled to an accounting, and deny the remaining allegations in this Paragraph.

149.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff is entitled to an accounting, and deny the remaining allegations in this Paragraph.

150.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff is entitled to an accounting, and deny the remaining allegations in this Paragraph.

151.    Lokal Defendants deny the allegations in this Paragraph insofar as they purport to state a legal conclusion, which requires no response, deny Plaintiff is entitled to an accounting, and deny the remaining allegations in this Paragraph.

## CONDITIONS PRECEDENT

152.    Lokal Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph, and on that basis, deny them.

## JURY DEMAND

153.    To the extent the allegation in this paragraph is a legal conclusion, it requires no response.

Lokal Defendants renew the original demand to a trial by jury as to all claims so triable and pray that Plaintiff take nothing by way of the FAC.

**AFFIRMATIVE DEFENSES**

Lokal Defendants assert the following affirmative defenses to claims of the FAC.

First Affirmative Defense (Plaintiff fails Abstraction Filtration Comparison test)

Plaintiff's claims are barred, in whole, or in part, because Plaintiff's Copyright and copyright claim cannot survive an Abstraction Filtration Comparison test which will weed out protectable versus unprotectable elements before making a comparison between the accused work and Plaintiff's Copyright.  Plaintiff's work contains all-too common elements that are functional rather than unique or original and/or standard configurations of spaces that cannot be copyrighted.  Because all of the features shown in the Copyright are not protectable under copyright laws, the court shall disregard them for purposes of the substantial similarity analysis pursuant to *Savant Homes v. Collins*, 809 F.3d 1133 (2016).

And on information and belief, the file history of Plaintiff's counsel's applications to the U.S. Copyright Office contained exaggerations and misrepresentations intended to procure the Certificate of Registration VA2000346599 ("Registration '599").  In reality, the subject of Registration '599 did not contain sufficiently original material to have been registered in the first place.

On information and belief, Plaintiff originally filed at least eleven separate copyright applications on or near February 7, 2023 (long after the Hub at Virginia Village Project and after the commencement of C&F and CVR) to secure *ex post facto* protection for each of the Lokal Floorplans (the "Henry," "Oliver," "Taylor," "Clark," and

28

"Baxter") but failed.  Plaintiff's eleven copyright applications were made under the U.S.

Copyright Office Case Numbers and titles shown below (the "WAGI Applications"):

- 1-12213180401 entitled "Carriage Towns Plan 1"
- 1-12213180605 entitled, "Carriage Towns Plan 2"
- 1-12213181276 entitled "Carriage Towns Concept Building"
- 1-12213181304 entitled "Rowtowns Plan 1"
- 1-12213181332 entitled "Rowtowns Plan 2"
- 1-12213181360 entitled "Rowtowns Plan 3"
- 1-12213355416 entitled "Rowtowns / Carriage Towns 4+2,"
- 1-12213356164 entitled "Rowtowns 4-Plex"
- 1-12213355454 entitled "Rowtowns 5-Plex" and
- 1-12213355483 entitled "Rowtowns 6-Plex"
- 1-12213181388 originally entitled "Rowtowns and Carriage 6-Plex" (later
  re-titled "Rowtowns and Carriage 5-Plex" after initial rejection by the U.S.
  Copyright Office.  (On information and belief, this application became the
  subject of Registration '599.)

The U.S. Copyright Office initially rejected all of the WAGI Applications.  WAGI's

Counsel submitted a response to the U.S. Copyright Office contending all of the WAGI

Applications should be registered and requested a call with the Examiner's supervisor to

make his case.  The U.S. Copyright Office still rejected all of the WAGI Applications with

the exception of Case Number 1-12213181388 (which became Registration '599).

When rejecting the WAGI Applications, the U.S. Copyright Office made clear in its May

11, 2023, letter to WAGI's counsel:

> "[F]ive of [the Floor Plan Applications] depict each of the individual units and six
> applications show various building configurations containing some or all of the
> individual units . . . and other building configurations only contain the interior
> layout for a single floor rather than the three floors, and only two building
> configuration applications provide exterior elevations, **even though Section 102
> of the Copyright Act requires the deposited *blueprints* to show 'overall
> form' (ie; [sic] <u>exterior elevations</u>) <u>and</u> 'the arrangement and composition of
> spaces')** (ie; [sic] interior layout) for an architectural work." [WAGI001381
> emphasis added]

On information and belief, WAGI's counsel never informed the U.S. Copyright Office that the deposit materials submitted with the application Registration '599 were not true blueprints from which a home could be constructed.  On information and belief, WAGI's counsel intentionally omitted or exaggerated the description of the WAGI Floorplan Application deposit materials to overcome the U.S. Copyright Office's initial view of the WAGI Application materials as unenforceable conceptual drawings, for which "the copyright owner cannot prevent a third party from using that drawing to construct an actual building."  WAGI000977.  WAGI's counsel argued to the U.S. Copyright Office that the individual units "can be freestanding, but in this configuration share common walls" and likewise urged the U.S. Copyright Office to register the WAGI Applications as "alternative configuration[s]" of the underlying Copyright.  The U.S. Copyright Office denied Plaintiff's counsel's request.  WAGI001381, p. 1.

Furthermore, WAGI's counsel was asked by the U.S. Copyright Office, *"Have you constructed the building(s) in the blueprints?  If not, do you plan to construct the buildings(s)?  If you do not plan to construct the building(s), what are you planning to use these blueprints to do?"*  WAGI000972.

On information and belief, WAGI's counsel omitted to the U.S. Copyright Office that the "concept drawings" were **not blueprints** because the U.S. Copyright Office's position was that "Section 102 of the Copyright Act requires the **blueprints** to show overall form (. . . exterior elevation)," WAGI001381.  On information and belief, WAGI's counsel similarly omitted to the U.S. Copyright Office that the images of the exterior elevations submitted as deposit material for secure Registration '599 were never utilized

30

in any building whatsoever. Indeed, Lokal had its own external elevation drawings for Hub at Virginia Village Project as well as for C&F and CVR that were not similar to the exterior elevations submitted as deposit material to secure Registration '599. The omissions and exaggerations to the U.S. Copyright Office were by design to obtain an architectural work copyright registration from which Plaintiff could concoct a copyright infringement claim.

Plaintiff's Copyright cannot survive an Abstraction Filtration Comparison Test because the underlying WAGI Applications were rejected as unoriginal and the Copyright itself comprises the same unoriginal material and was procured through a series of omissions, misrepresentations and exaggerations to the U.S. Copyright Office.

<u>Second Affirmative Defense (Copyright Misuse)</u>

Plaintiff is barred from enforcing its Copyright even if it can in fact demonstrate that the Copyright contains copyrightable/protectable subject matter because Plaintiff has attempted to extend or has extended the monopoly granted to Plaintiff under the Copyright Act beyond the scope of the Copyright by prohibiting Lokal Defendants from creating and using its own works in the building industry for four-, five- and six-plex condominiums including but not limited to certain buildings at C&F and CVR.

Plaintiff demanded that Lokal Defendants, a competitor in the residential home design industry, cease all use of the allegedly infringing work, despite that the Copyright at issue includes non-protectable elements and that Lokal Defendants' works are distinguishable and despite that Plaintiff had been aware of Lokal Defendants' intention to build additional properties and despite Lokal Defendants' belief no reuse fee or other

fee was due and despite that Lokal Communities had already built and designed its

own, original condominium homes in Colorado at developments called Hyland Village

and the Meadows, both of which were inspiration for Lokal's subsequent projects at the

Hub at Virginia Village Project, C&F, and CVR and both of which pre-date Lokal

Communities or LOKAL's involvement with WAGI and pre-date WAGI's alleged

Copyright.

Plaintiff further misused the Copyright to notify Lokal Defendants' lenders and

asked that Lokal Defendants notify all purchasers of Lokal Defendants' properties that

such purchasers may be liable for infringement if they subsequently sell their homes,

which no Court in this District has ever held before.

Tellingly, Plaintiff originally filed at least eleven separate floorplan copyright

applications – the WAGI Applications – on or near February 7, 2023 and all but one

failed.  On information and belief, this was done at least four years after the Hub at

Virginia Village Project started, and after the commencement of C&F and CVR, to

secure *ex post facto* protection for what WAGI alleges are infringed by the Lokal

Floorplans (the "Henry," "Oliver," "Taylor," "Clark," and "Baxter").

The U.S. Copyright Office *rejected* all of the WAGI Applications.  WAGI's counsel

submitted a response to the U.S. Copyright Office contending all of the WAGI

Applications should be registered, and requested a call with the Examiner's supervisor

to make his case.  WAGI000969.  The Copyright Office was not persuaded by Plaintiff

or its counsel.  All of the individual WAGI Applications were *ultimately rejected* with the

exception of Case Number 1-12213181388 (which became the Copyright, Registration '599).

When rejecting the individual WAGI Applications, the U.S. Copyright Office made clear in its May 11, 2023 letter to WAGI's counsel:

> "[F]ive of [the Floor Plan Applications] depict each of the individual units and six applications show various building configurations containing some or all of the individual units . . . and other building configurations only contain the interior layout for a single floor rather than the three floors, and only two building configuration applications provide exterior elevations, **even though Section 102 of the Copyright Act requires the deposited** *blueprints* **to show 'overall form' (ie; [sic] <u>exterior elevations</u>)** <u>and</u> **'the arrangement and composition of spaces'**) (ie; [sic] interior layout) for an architectural work."  [WAGI001381 emphasis added]

On information and belief, Plaintiff and its counsel never informed the U.S. Copyright Office that the deposit materials submitted with the application for Registration '599 were not true blueprints from which a home could be constructed.  On information and belief, they intentionally omitted or exaggerated the description of the deposit materials to secure Registration '599.  On information and belief, this was to overcome the U.S. Copyright Office's initial view of materials for the WAGI Applications as unenforceable conceptual drawings, for which "the copyright owner cannot prevent a third party from using that drawing to construct an actual building."  WAGI000977.

WAGI's counsel argued to the U.S. Copyright Office that the individual units "can be freestanding, but in this configuration share common walls" and likewise urged the U.S. Copyright Office to register the multiple WAGI Applications as "alternative configuration[s]" of the underlying Copyright.  The U.S. Copyright Office rejected WAGI's request.  WAGI001381, p. 1.

Furthermore, WAGI's counsel was asked by the U.S. Copyright Office, *"Have you constructed the building(s) in the blueprints?  If not, do you plan to construct the buildings(s)?  If you do not plan to construct the building(s), what are you planning to use these blueprints to do?"* WAGI000972.  On information and belief, WAGI's counsel omitted to the U.S. Copyright Office that the "concept drawings" were ***not blueprints*** because the U.S. Copyright Office's position was that concepts are not protectable and "Section 102 of the Copyright Act requires the **blueprints** to show overall form (. . . exterior elevation)," WAGI001381.  On information and belief, Plaintiff's counsel similarly omitted to the U.S. Copyright Office that the images of the exterior elevations submitted as deposit material for Registration '599 were never utilized in any building whatsoever. Indeed, Lokal had created its own external elevation drawings for Hub at Virginia Village Project that were not similar to the exterior elevations submitted as deposit material to secure Registration '599 and worked with a different architect and did so also for C&F and CVR.  These omissions and exaggerations to the U.S. Copyright Office were by design to obtain an architectural work copyright registration from which Plaintiff could concoct a copyright infringement claim.

Plaintiff's omissions of material facts and exaggerations to the U.S. Copyright Office were made knowingly, intentionally and fraudulently and for the purpose of improperly asserting and expanding rights.  Plaintiff's copyright misuse is contrary to public policy and has been made for the purpose of monopolizing four-, five- and six-plex cluster townhome designs and to extort damages and cause undue burden to Defendants by way of this lawsuit.

4902-6814-5174

Third Affirmative Defense (Estoppel)

Plaintiff is estopped from bringing its claims because Plaintiff, through its actions, representations, or failure to act, induced Lokal Defendants to reasonably rely on Plaintiff's conduct to its detriment, making it inequitable for Plaintiff to assert the alleged claims of copyright infringement. Lokal Communities told Plaintiff it was building subsequent properties in October of 2021 and Plaintiff originally represented that it was simply concerned about liability and multiple correspondences and communications ensued thereafter whereby Lokal Defendants sent an insurance policy and a draft indemnification agreement for CVR and C&F through 2022. In July of 2022, nearly a year later and well into the construction of the subsequent projects, Plaintiff demanded a license fee and said all other offers were withdrawn and suddenly claimed copyright ownership for the works discussed at the charrette – despite not having filed a single copyright application in nearly four years of dealing with Lokal on the project, despite not having asserted or claimed exclusive ownership interest in all dealings with Lokal Defendants previously, and despite not having claimed exclusive ownership interest at the MAME awards discussed above. Lokal Defendants reasonably relied on Plaintiff's silence leading them to believe that use of the accused work was non-infringing and authorized. Lokal Defendants relied on Plaintiff's conduct and silence regarding copyright ownership in good faith. Lokal Defendants are now harmed and prejudiced and will continue to be harmed and prejudiced if Plaintiff is permitted to maintain its copyright claim now. Plaintiff knew or should have known that Plaintiff's actions were

relied upon or would be relied upon by Lokal Defendants to their detriment as they invested substantial time, effort and expense in developing C&F and the CVR.

### Fourth Affirmative Defense (Acquiescence)

Plaintiff knowingly allowed or implicitly accepted the Lokal Defendants' actions without objection as they had been in frequent contact with Plaintiff, and Plaintiff had only requested insurance and later indemnity, but did not raise a concern or issue of a potential copyright violation, and attended MAME awards onstage with Lokal Defendants while never asserting exclusive copyright ownership, thereby consenting to Lokal Defendants' use of the accused works and waiving the right to now assert infringement as Lokal Defendants reasonably relied on Plaintiff's inaction and/or implied consent to continue using the accused works. Lokal Defendants will now suffer harm or injustice if Plaintiff is permitted to maintain its copyright claim after having acquiesced to the accused use.

### Fifth Affirmative Defense (Laches)

Plaintiff's copyright claim is barred in whole or in part by the doctrine of laches.

### Sixth Affirmative Defense (Statute of Limitations)

Plaintiff's claim is barred by the statute of limitations to the extent Plaintiff did not timely register its copyright and did not bring a claim within three years of the claim accruing.

### Seventh Affirmative Defense (Unjust Enrichment)

Plaintiff has received a benefit from Lokal Defendants in that Lokal Defendants paid Plaintiff for its services, but Plaintiff failed to adequately deliver the type of services

Lokal Defendants needed. Plaintiff will be unjustly enriched if permitted to recover
financially after Lokal Defendants incurred the time, effort and expense to develop the
properties at issue using Lokal Defendants' work.

Eight Affirmative Defense (Joint Authorship)

Plaintiff's claim for copyright infringement is barred in whole or in part because
Lokal Defendants, individually or collectively, are joint authors and have equal rights to
the works including the right to use, publish, share, and exploit such works and
therefore have a complete defense to Plaintiff's infringement claim.

Ninth Affirmative Defense (Failure to State a Claim)

Plaintiff has not sufficiently alleged the necessary elements of copyright
infringement in that the allegedly infringed work does not contain sufficient originality
and under the Abstraction Filtration Comparison test, Plaintiff has not shown original,
creative, non-functional aspects of the underlying work which forms a basis of Plaintiff's
infringement claim.

Tenth Affirmative Defense (License)

Plaintiff granted an implied or express license to use the allegedly infringing
work.

Eleventh Affirmative Defense (Waiver)

Plaintiff's claims are barred, in whole or in part by the doctrine of waiver because
Plaintiff knowingly and voluntarily relinquished its rights with respect to the matters
alleged in the FAC by Plaintiff's words, actions or inactions and Lokal Defendants relied
on Plaintiff's waiver to their detriment.

4902-6814-5174

<u>Twelfth Affirmative Defense (Lack of Originality)</u>

The purported architectural work alleged in the FAC lacks originality and is comprised of functional material that is not unique and is instead used across the industry and is therefore not entitled to copyright protection and therefore cannot serve as a basis for an infringement claim.

<u>Thirteenth Affirmative Defense (Fair Use)</u>

The accused work and alleged use were permissible under the doctrine of fair use.

<u>Fourteenth Affirmative Defense (Public Domain)</u>

Plaintiff's alleged copyright is comprised of common elements in the public domain, used in computer-aided design ("CAD") software in the architectural and residential construction industry, and used in standard floor plan concepts, all of which are in the public domain and not the subject of copyright protection to the exclusion of others.

<u>Fifteenth Affirmative Defense (Independently Created Work)</u>

Lokal Defendants' accused work was independently created and drafted by Lokal Defendants' staff after the charrette meeting between the parties and is therefore non-infringing and not subject to an infringement claim and were also inspired from other projects previously developed by Lokal Communities, such as Hyland Village and the Meadows, and were influenced by local and municipal codes, market demands, functional requirements, accessibility requirements, and independent expression.

<u>Sixteenth Affirmative Defense (Utilitarian/Functional Work Not Protectable)</u>

Under 17 U.S.C. § 102(b), functional or utilitarian designs are not protected, and Plaintiff's works consist of common elements available in the public domain, actually or potentially in Architectural CAD software, and frequently used for design drawings. Plaintiff's alleged copyright is not an independent architectural work, lacks originality, and is comprised of functional material that is not unique and is instead used across the industry, and is therefore not entitled to copyright protection and cannot serve as a basis for an infringement claim.  Indeed, Plaintiff attempted to register at least eleven different copyright applications to cover the elements of the Copyright at issue in the registration and failed in all but one instance because of lack of originality/functionality.

Seventeenth Affirmative Defense (<em>De Minimis</em> Use)

Lokal Defendants' alleged copying, if any, is so minimal that it is insignificant, *de minimis* use, and does not trigger lability for infringement or damages.

Eighteenth Affirmative Defense (Merger)

Plaintiff's copyright is unprotectable because there is only one or a limited number of ways to express the idea that purportedly constitutes Plaintiff's copyrighted work; the idea and its expression are so closely tied that they are essentially one and the expression is not copyrightable.

Nineteenth Affirmative Defense (Failure to Mitigate Damages)

Plaintiff failed to take reasonable steps to reduce or prevent damages.

Twentieth Affirmative Defense (Unclean Hands)

Lokal Defendants relied on the implied permissions of Plaintiff to move forward with building projects at "Centennial & Fillmore" and "The Commons at Victory Ridge"

39

only to have Plaintiff make an about-face and later file a copyright application for basic

floor plan components as a prerequisite for a copyright infringement claim nearly five

years after Plaintiff and Lokal Defendants worked collaboratively on a building project.

In fact, Plaintiff attempted, without success, to register at least ten other variations of the

floor plan designs at issue in this case.  On information and belief, Plaintiff's counsel

omitted facts and/or exaggerated details to the U.S. Copyright Office to secure

Registration '599, including but not limited to affixing exterior elevations that have not

been and were never used by either party in this case, but instead were used as a

means to secure an architectural copyright for which the underlying work would

otherwise be ineligible.  As the well-known maxim indicates, "He who comes into equity

must come with clean hands" and Plaintiff's hands are not clean in this case.

<u>Twenty-First Affirmative Defense (Transformative Work)</u>

The allegedly infringing work substantially transforms the design by integrating

new expressive elements, qualifying as a non-infringing derivative work.

<u>Twenty-Second Affirmative Defense (Necessity)</u>

The design at issue was used for a project serving the public interest in that

Lokal Defendants are focused on creating high-density housing solutions in an

economical manner in what is a housing crisis, and the Copyright incorporates standard

features for allowing high density urban housing projects; public policy dictates that the

design is a necessity and should therefore remain in the public domain.  Moreover, the

design is influenced by logistical, functional, or structural constraints to serve the public

interest rather than being influenced by copying; it consists of items that are actually or

4902-6814-5174

possible found in CAD drawings which third parties must be entitled to utilize for the creation of additional row-home and town-home concept drawings, among other things.

<u>Twenty-Third Affirmative Defense (Reservation)</u>

Lokal Defendants reserve their rights to bring additional affirmative defenses or to modify the defenses listed herein as the case progresses.

WHEREFORE, having answered Plaintiff's First Amended Complaint, Lokal Defendants request that the Court enter judgment in their favor and against Plaintiff, dismiss the claims asserted against Lokal Defendants with prejudice, award Lokal Defendants its reasonable attorney fees and costs under 15 U.S.C. § 505 and any other applicable authority, and issue such other relief as the Court deems appropriate.

## **AMENDED COUNTERCLAIMS**

Counterclaimants Lokal Communities, Lokal Homes, and L&L bring the following counterclaims against Counterclaim-Defendant Woodley Architectural Group, Inc. ("WAGI") as follows:

## **PARTIES**

1.      Lokal Communities is a Colorado limited liability company and is the owner and general contractor for multi-family real estate projects.

2.      Lokal Homes is a Colorado limited liability company and is owned by the same parent company as Lokal Communities.

3.      L&L is a Colorado holding company and is the sole member of Lokal Communities and Lokal Homes.

41

4.      Lokal Communities and Lokal Homes are collectively referred to hereinafter as "LOKAL."

5.      WAGI is a Colorado corporation.

## JURISDICTION AND VENUE

6.      These counterclaims arise under the copyright laws of the United States, Title 17, United States Code.

7.      This Court has subject matter jurisdiction under at least 28 U.S.C. § 1338 and Rule 13(a), Fed. R. Civ. P.

8.      WAGI resides in this District and is subject to personal jurisdiction of this Court.

9.      WAGI resides in this District and based on its filing of this action, venue is proper in this District pursuant to at least 28 U.S.C. § 1400.

## FACTUAL BACKGROUND

10.     LOKAL is engaged in the business of home-building in Colorado with a focus on developing communities with beautifully crafted, modern homes in the Denver-metro and Colorado Springs area.

11.     Mr. Lemnah is a principal decisionmaker at both Lokal Communities and Lokal Homes.

12.     WAGI is an architectural firm.

13.     Mr. Lemnah had previous dealings with WAGI while he was employed by Richmond American Homes ("Richmond").

14.    Mr. Lemnah's knowledge and experience at Richmond was that WAGI provided design-only work for Richmond to use on their projects, which Richmond was authorized to use on more than one project without paying a reuse fee to WAGI.

15.    Design-only work would include conceptual floorplans but not construction documents or value-engineering work.

16.    On information and belief, WAGI did not require a reuse fee from Richmond for design-only work.

## CHARRETTE BETWEEN LOKAL AND WAGI

17.    In 2018, LOKAL approached WAGI to collaborate on design services for high-density housing.

18.    A high-density housing project known as Evans and Holly, a/k/a the Hub at Virginia Village was being evaluated for development by LOKAL.

19.    LOKAL expected WAGI to provide services similar to what WAGI had provided for Richmond.

20.    On September 28, 2018, WAGI sent a proposed draft contract to Lokal Homes which was not accepted by LOKAL.

21.    Finding the fees proposed by WAGI to be excessive, LOKAL rejected the proposed draft contract from WAGI.

22.    The proposed draft contract from WAGI was never signed by anyone on behalf of WAGI.

23.    The proposed draft contract from WAGI was never signed by anyone on behalf of LOKAL.

4902-6814-5174

24.     Instead of WAGI's proposed services, LOKAL proposed conducting a charrette (meeting) with WAGI to work on designs for high density townhomes for LOKAL's use in projects such as the Hub at Virginia Village Project.

25.     The charrette between LOKAL and WAGI took place on December 18, 2018.

26.     During the charrette, designs for the Hub at Virginia Village Project including high-density townhomes were discussed and the parties collaborated on those designs.

27.     WAGI presented initial site plans and design concepts to LOKAL at the charrette for the Hub at Virginia Village Project including floorplans and elevation drawings which were discussed and modified between LOKAL and WAGI at the charrette in a collaborative manner.

28.     WAGI's exterior elevation design concepts were disappointing to LOKAL and LOKAL later decided to not use WAGI for further work on the Hub at Virginia Village Project.

29.     LOKAL did not use WAGI's exterior elevation design concepts for the Hub at Virginia Village Project or for any other project.

30.     In addition to WAGI's exterior elevation design concepts, WAGI provided Lokal Homes with five three-story townhome floorplan drawings that WAGI refers to as "Carriage Town | Plan One," "Carriage Town | Plan Two," "Rowtown | Plan One," "Rowtown | Plan Two," and "Rowtown | Plan Three" bearing a "12.19.18" datestamp (collectively, "WAGI Floorplans") attached hereto as **Exhibit A**.

44

31.     On information and belief, WAGI filed the WAGI Applications in attempt to register each of the individual WAGI Floorplans several years later, in 2023.

32.     The U.S. Copyright Office rejected ten out of eleven of the copyright applications for the individual WAGI Applications, with the exception of Registration '599.

33.     The WAGI Applications and WAGI Floorplans included standard, functional and unoriginal elements such as a garage on the lower level; a kitchen adjacent a dining room; a great room and powder room on the main level; and at least two bedrooms and two bathrooms on the upper level.

34.     WAGI did not provide completed project documents such as construction documents or blueprints for the Hub at Virginia Village Project or for any other project.

35.     The parties never signed an agreement related to the WAGI floorplans.

**LOKAL FLOORPLANS**

36.     LOKAL created its own five floorplans for high density housing without WAGI's further participation, namely "Henry," "Oliver," "Taylor," "Clark," and "Baxter" ("Lokal Floorplans") for the Hub at Virginia Village Project that were distinguishable from and not substantially similar to the WAGI Floorplans including different dimensions and entirely different, modern exterior elevations.  Copies of these Lokal Floorplans are attached as **Exhibit B**.

37.     The Henry floorplan is a three-bedroom townhouse design, like WAGI's "Rowtown | Plan One" floorplan, but is distinguishable from WAGI's plan by: not having a patio that extends beyond the entry on the lower floor; not having a diagonal hallway

on the upper floor; not having a diagonal wall in each of the two bedrooms on the upper floor; not having a diagonal wall in the two walk-in closets on the upper floor; not having a diagonal wall in one of the bathrooms on the upper floor; having a walk-in-closet connected to each bathroom on the upper floor; and having a linen closet next to the laundry room instead of across from the laundry room on the upper floor. *See* Ex. B, p. 1.

38.     On information and belief, WAGI attempted to register the floorplan for WAGI's Rowtown | Plan One (which Plaintiff alleges is similar to the Henry) in February of 2023 under U.S. Copyright Case Number 1-12213180401 but the application was rejected.

39.     The Oliver floorplan is a four-bedroom townhouse design, like WAGI's "Rowtown | Plan Two" floorplan, but is distinguishable from WAGI's plan by: not having a deck that extends beyond the exterior wall on the main floor; having a wall jut between the kitchen and the great room on the main floor; not having the kitchen counter intrude into the kitchen space but instead recede back so as to be flush with the dining room wall on the main floor; not having a pantry along the same wall as the kitchen counter on the main floor; not having a master bedroom with a windowed wall aligned along the same plane as the exterior wall of the entry opposite the garage; not having the doors to the second and third bedrooms aligned along the same plane; not having the windowed walls of the second and third bedrooms aligned along the same plane; and having a linen closet next to the laundry room instead of across from the laundry room on the upper floor. *See* Ex. B, p. 2.

40.     On information and belief, WAGI attempted to register the floorplan for WAGI's Rowtown | Plan Two (which Plaintiff alleges is similar to the Oliver) in February of 2023 under U.S. Copyright Case Number 1-12213180605 but the application was rejected.

41.     The Taylor floorplan is a four-bedroom townhouse design, like WAGI's "Rowtown | Plan Three" floorplan, but is distinguishable from WAGI's plan by: not having an exterior meters room or a recessed open storage area in the garage; having a closet for the living room on the lower floor; not having a master bedroom with a wall that is not along the same plane as the master bathroom wall on the upper floor; and not having a hallway linen closet but instead having a tech center on the upper floor.  *See* Ex. B, p. 3.

42.     On information and belief, WAGI attempted to register the floorplan for WAGI's Rowtown | Plan Three (which Plaintiff alleges is similar to the Taylor) in February of 2023 under U.S. Copyright Case Number 1-12213181276 but the application was rejected.

43.     The Clark floorplan is a two-bedroom townhouse design, like WAGI's rejected copyright application for the floorplan for "Carriage Town | Plan One", but is distinguishable from WAGI's by: not having a completely square garage space on the lower floor; and not having a second bedroom extend beyond the wall of the master bedroom or the wall of the second bathroom on the main floor.  *See* Ex. B, p. 4.

44.     The Baxter floorplan is a three-bedroom townhouse design, like WAGI's rejected copyright application for the floorplan "Carriage Town | Plan Two", but is distinguishable from WAGI's by: not having a completely square garage space on the

lower floor; not having a pantry between the kitchen and dining room on the main floor; not having a counter extending from the pantry to the far wall of the dining room on the main floor; having a deck that extends to the longitudinal wall of the great room instead of stopping short; not having a windowed wall aligned along the same plane as the windowed wall of the master bedroom within a second bedroom; and not having built-in shelving in the master bedroom closet.  *See* Ex. B, p. 5.

45.    To the extent there are similarities between WAGI's floorplans and LOKAL's floorplans, they are the result of standard, functional, and unoriginal home features such as having, among other things: two, or three, or four bedrooms, a garage on the lower level; a kitchen adjacent a dining room; a great room and powder room on the main level; and at least two bedrooms and two bathrooms on the upper level.

46.    To the extent there are similarities between WAGI's floorplans and LOKAL's this is because concept plans (floorplans) include standard design representations and elements to indicate the location of walls, stairs, toilets, doorways, rooms and the like.

47.    LOKAL did not continue with WAGI for any further design charettes or collaborations for the Hub at Virginia Village Project or subsequent properties.

## **LOKAL PAYMENTS TO WAGI**

48.    After the charrette, in January 2019, WAGI demanded $165.22 for copies and $96,915.22 for the "Concept Phase" for a total of $97,080.44.

49.    The amount due to WAGI for the "Concept Phase" should have been $75,000 but Lokal Homes ultimately paid $97,080.44.

48

50.     In the same year, WAGI later demanded $104,490.00 for "Design Phase" work and LOKAL discovered it had overpaid WAGI for the "Concept Phase."

51.     Lokal Communities later paid WAGI a total of $82,574.78 which represent $75,000 for the "Concept Phase" and an additional $7,574.78 for the "Design Phase" (which equals the $104,490.00 invoice less $96,915.22).

52.     LOKAL paid WAGI a total of $179,655.22.

53.     LOKAL believed the amounts invoiced by WAGI were excessive, but they paid WAGI in order to maintain a positive business relationship.

## OTHER LOKAL PROJECTS

54.     In 2020, Lokal Communities began work on two other projects: CVR[2] and C&F[3].  C&F would use LOKAL's "Clark," "Baxter," "Henry," "Oliver," and "Taylor" floorplans from the Hub at Virginia Village Project as well as three others, the "Sean," "Ellis," and "Conrad," which are all two-story homes.  At CVR, LOKAL used the "Clark," "Henry," "Oliver," "Taylor," and added a new floorplan, the "Emmet" and phased out the Baxter.

55.     Based on Mr. Lemnah's knowledge and experience at Richmond where WAGI's design-only work was used on more than one project without a reuse fee to WAGI, and because LOKAL created its own floorplans distinct from those it worked on with WAGI, LOKAL had no reason to believe that permission was required from WAGI

---

[2] This is also called Victory South.  For consistency it will be referred to as the "Commons at Victory Ridge" or CVR.

[3] This is also called The Vistas at West Mesa.  For consistency, it will be called C&F.

to use LOKAL's "Clark," "Baxter," "Henry," "Oliver," and "Taylor" floorplans from the Hub at Virginia Village Project for the work at CVR and C&F.

56.    WAGI was told by Lokal Communities that it would be developing the CVR and C&F projects.

57.    On June 3, 2020, acknowledging that there was no signed contract, WAGI requested that LOKAL execute the earlier draft contract that WAGI had proposed back in 2018.

58.    LOKAL still did not agree with the terms of the earlier draft contract WAGI proposed in 2018 and did not sign it.

59.    On October 28, 2021, WAGI informed LOKAL that WAGI's "reuse fee is based on our exposure and liability," only, and did not raise the issue of any purported copyright.

60.    Mr. Lemnah and Mr. Woodley later discussed the CVR and C&F projects at the MAME Awards in November 2021 and at no time did Mr. Woodley raise the issue of exclusive copyright ownership or any other copyright violation by LOKAL.

61.    Mr. Woodley told Mr. Lemnah that an indemnification from LOKAL for those two projects to protect WAGI from potential liability would be sufficient and that a reuse fee would not be necessary.

62.    Notwithstanding Mr. Woodley's statement to Mr. Lemnah that an indemnification from Lokal Communities would be sufficient and that a reuse fee would not be necessary, WAGI later sent Lokal Homes two invoices dated January 27, 2022.

63.    One invoice was for C&F in the amount of $50,000.00.

64.    Another invoice was for CVR[4] in the amount of $91,800.00.

65.    In March and April of 2022, Mr. Woodley and Mr. Lemnah exchanged text messages on the subject of indemnification where Mr. Woodley separately acknowledged that other projects have used four-plex back-to-back townhouse design concept in the marketplace.

66.    Mr. Lemnah noted in a July 5, 2022 email to Mr. Woodley that "We have made considerable changes to the elevations and floor plans and have not used your name on any of our work products or conceptual drawings."

67.    On or about July 2022, Mr. Woodley and Mr. Lemnah exchanged emails on the subject of indemnification.

68.    Mr. Lemnah provided a written indemnity agreement to indemnify WAGI for claims related to the original designs.

69.    Mr. Lemnah further offered to add WAGI to Lokal's insurance policy if he truly was concerned about indemnity as additional assurance for the CVR[5] and C&F projects.

70.    In a July 13, 2022 email, Mr. Woodley declined Mr. Lemnah's offer for indemnification as they had previously discussed for months prior, and went back to proposing a reuse fee arrangement.

71.    At no time did Mr. Lemnah agree that a reuse fee for WAGI was appropriate or due.

---

[4] Victory South.
[5] Victory South.

4902-6814-5174

72.    In late 2022, long after LOKAL had relied on Mr. Woodley's representations that he was only concerned about liability/needing indemnity or insurance, and well after Lokal Communities had been working on the CVR and C&F projects, WAGI accused LOKAL of infringing the copyright for the WAGI floorplans.

73.    WAGI takes no issue with the Hub at Virginia Village Project, which included multiple five-plex, three-story townhomes for high density living.

74.    The C&F project shown in **Exhibit C** is entirely different from the Hub at Virginia Village Project where all buildings are three-story five-plexes:  Building "1" is a six-plex of traditional row/townhomes; buildings "2-8" and "10-11" are six-plexes; only building "9" is a three-story five-plex. The buildings south of "Beckton Heights" on the area map are mixed two- and three- story five-plexes.

75.    The CVR project is entirely different from the Hub at Virginia Village Project, specifically, the CVR project contains twenty-one (21) buildings of traditional row/townhomes, and the remaining buildings are four-plex townhomes; none of the properties are five-plexes.  Attached as **Exhibit D** is an area map of the CVR.

76.    Some of the inspiration for the Hub at Virginia Village Project, C&F and CVR came from Lokal Communities' prior developments at Hyland Village and the Meadows, both in Colorado, and both of which pre-date the Copyright and pre-date LOKAL's dealings with WAGI on the Hub at Virginia Village Project.

**<u>ROW HOMES AND TOWNHOMES ARE NOT ORIGINAL</u>**

77.    Row homes and townhomes are not original.  As explained in Michael Y. Park's November 14, 2024 *Architectural Digest* article entitled "*Row Houses: Everything*

*You Need to Know About the Distinctly Urban Home,*" row homes and town homes have been in existence in America since at least the 1800's. *See* article attached at **Exhibit E.**

78.     Row homes and townhomes are functional. They are known for their "affordability," and "can also be great for people who have just transitioned from rentals to becoming homeowners." Ex. E, p. 8.

79.     The *Architectural Digest* article by Park explains:

In America, row houses were an answer to the need for decent housing in rapidly growing cities in places like New York City or Boston . . . now many row houses in the US date to the 19th century and early 20ths century . . . [a]s the cities and people who lived in the row houses changed, so did the row houses themselves, going from an economical choice, to almost synonymous with urban blight, to now being a status symbol in the 21st century.

Ex. E p. 6.

80.     When applying for the referenced MAME Award, LOKAL indicated that the Virginia Village Project "presented numerous challenges and opportunities [as an] urban infill location" that "featured two product lines, row townhomes, and back-to back cluster style townhomes" with "*functional design*" as stated in the FAC ¶ 74 (emphasis added).

81.     On information and belief, WAGI filed Registration '599 titled "Rowtowns and Carriage 5-Plex" on February 7, 2023 as one of the eleven WAGI Applications.

82.     On information and belief, WAGI submitted the WAGI floorplans in the application for the Copyright covering the images below as shown in the deposit materials attached as **Exhibit F, pp. 2-6.**







CONCEPT BUILDINGS
EVANS + HOLLY | LOKAL HOMES



54

83.     LOKAL's elevation is entirely different from Plaintiff's elevation, a copy of which is shown below and attached as **Exhibit G**.



84.     Lokal Communities' floorplans are distinguishable from Plaintiff's as explained in the preceding Paragraphs 33-41.

85.     Yet, WAGI has accused Lokal Defendants of infringing the Copyright in the present action.

86.     On information and belief, WAGI originally filed the eleven separate WAGI Applications to secure *ex post facto* protection to assert copyright infringement for each of the Lokal Floorplans (the "Henry," "Oliver," "Tyalor," "Clark" and "Baxter"). The U.S. Copyright Office rejected all but one of the WAGI Applications.

87.     On information and belief, when rejecting the WAGI Applications, the U.S.

Copyright Office made clear:

> "[F]ive of [the Floor Plan Applications] depict each of the individual units and six
> applications show various building configurations containing some or all of the
> individual units . . . and other building configurations only contain the interior
> layout for a single floor rather than the three floors, and only two building
> configuration applications provide exterior elevations, **even though Section 102
> of the Copyright Act requires the deposited** *blueprints* **to show 'overall
> form' (ie; [sic] <u>exterior elevations</u>) <u>and</u> 'the arrangement and composition of
> spaces'**) (ie; [sic] interior layout) for an architectural work." [WAGI001381
> emphasis added]

88.      On information and belief, WAGI's counsel never informed the U.S.

Copyright Office that the deposit materials submitted with the application for the

Copyright Registration were not true blueprints from which a home could be

constructed.

89.     On information and belief, the file history of the WAGI Applications

contains exaggerations and misrepresentations by WAGI and its counsel intended to

procure the asserted Copyright and to avoid the U.S. Copyright Office's initial view of

the WAGI Applications as unenforceable conceptual drawings, for which "the copyright

owner *cannot prevent a third party from using that drawing* to construct an actual

building."  WAGI000977 (emphasis added).

90.     WAGI's counsel argued to the U.S. Copyright Office that the individual

units "can be freestanding, but in this configuration share common walls" and likewise

urged the U.S. Copyright Office to register the WAGI Applications as "alternative

configuration[s]" of the underlying Copyright, but the U.S. Copyright Office rejected

Plaintiff's request.  WAGI001381, p. 1.

91.     On information and belief, Counsel for Plaintiff was asked by the U.S.
Copyright Office, *"Have you constructed the building(s) in the blueprints?  If not, do you
plan to construct the buildings(s)?  If you do not plan to construct the building(s), what
are you planning to use these blueprints to do?"*  WAGI000972.

92.     On information and belief, WAGI did not disclose to the U.S. Copyright
Office that the "concept drawings" were ***not blueprints*** because the U.S. Copyright
Office's position was that "Section 102 of the Copyright Act requires the **blueprints** to
show overall form (. . . exterior elevation)."  WAGI001381.

93.     WAGI's Copyright deposit materials were not blueprints; the exterior
elevation was not an elevation that had ever been built by either party in this case and
WAGI, who filed to register the Copyright nearly five years after the initial project, knew
the elevation was never going to be built by either party in this case.

94.     On information and belief, WAGI only filed the exterior elevation pages in
the Copyright because, absent the exterior elevations, the application to register the
Copyright would have been rejected, just like the ten other WAGI Applications.

95.     Lokal had its own drawings for the exterior elevations for the Hub at
Virginia Village Project, C&F, and CVR and in fact took inspiration for the interior floor
plans from its prior projects at Hyland Village and the Meadows developments in
Colorado.  It also formed its inspiration based on the dictates and confines of local and
municipal code requirements, functional requirements, accessibility standards, and
market demands.

4902-6814-5174

96.     On information and belief, WAGI's omissions and exaggerations to the U.S. Copyright Office were by design to obtain an architectural work copyright registration from which they could concoct a copyright infringement claim, when in reality, Plaintiff's Copyright should have been denied.

97.     On information and belief, the purported Copyright cannot survive an Abstraction Filtration Comparison Test because the underlying WAGI Applications were rejected as unoriginal; the Copyright itself comprises the same unoriginal, unprotectable material.

98.     On information and belief, WAGI submitted responses to the U.S. Copyright Office but never informed the U.S. Copyright Office that the underlying deposit materials for the Copyright did not contain "blueprints" and side-stepped the requirement to include "photographs" of the "constructed architectural works" including several exterior and interior views to support an architectural work copyright and sufficient to be granted the Copyright.  WAGI000973.

99.     On information and belief, WAGI and its counsel intentionally and strategically misled the U.S. Copyright Office to secure the Registration '599 for the sole purpose of bringing this lawsuit.

### FIRST COUNTERCLAIM
### (Declaratory Relief: Cancellation/Invalidation of WAGI's Purported Copyright)

100.    Counterclaimants incorporate by reference the preceding paragraphs.

101.    Based on filing of this action, an actual controversy has arisen and now exists between WAGI and Counterclaimants as to WAGI's purported Copyright.

4902-6814-5174

102.   This Court has wide discretion to determine the validity of copyrights as part of its jurisdiction over copyright disputes.

103.   To state a claim for copyright infringement requires ownership of a valid copyright, where the copied elements are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

104.   The application of the Abstraction Filtration Comparison test will make clear that WAGI's purported Copyright is not comprised of original elements, is not original, and is functional and therefore should not be entitled to copyright protection and should be invalidated by the Court.

105.   "Standard elements and standard arrangements receive no copyright protection."  *Savant Homes, Inc. v. Collins*, 809F.3d. 1133 (2013).

106.   Courts have concluded "[t]here are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room and study downstairs" and "industry standards" are not protectable.  *Id.*

107.   As evidenced by the multiple third parties that offer row, four-plex and five-plex homes, WAGI's purported Copyright should be invalidated for lacking in originality and for trying to copyright functional conceptual drawing.

108.   For example, MarkelHomes sells tri-level town and row homes as advertised in WestGrangeLongmont.com as shown below, excerpted from **Exhibit H**:

4902-6814-5174



109.    Cursory Google Image searches reveal multiple third-party examples of similar floor plan designs and features as shown below.



110.    The Copyright at issue is nothing more than a derivative concept drawing from which no structure can be built, but from which WAGI purports to claim exclusive Copyright.

4902-6814-5174

111.   The Copyright should likewise be invalidated because it is a derivation of pre-existing CAD symbols and items in the public domain to which no single entity has exclusive rights.

112.   CAD software programs (*i.e.*, AutoDesk AutoCad Architecture 2024) allow a user to create conceptual models/floorplans using drafting tools with short-cut features to insert a pre-drawn, well-recognized symbols such as stairs, plumbing fixtures, layouts, and more.

113.   As an example, the AutoDesk AutoCad Architecture reference guide "About Fixture Layouts in DesignCenter" explains that "each lavatory layout consists of a counter, made of a wall object, with the cleanup group "Toilet_Counter" with lavatory MV Blocks anchored" and "[t]he restroom files are preconfigured assemblies of individual layouts, arranged as typical mens' and women's restrooms."  *See* **Exhibit I, pp. 1-2**.

114.   WAGI's purported Copyright lacks originality, is functional, and should be canceled to avoid copyright misuse.

115.   WAGI's purported Copyright for architectural work contains functional aspects of building design including representations of walls, structural doors, necessary configurations for hallways, stairs, restrooms, windows that lack any originality separable from the functionality of the work and should be canceled because functional works are not entitled to copyright protection.

116.   Cancelling/invalidating WAGI's purported Copyright would benefit the public interest by allowing common industry elements to remain in the public domain

4902-6814-5174

and would further the interests of justice in preventing third parties from asserting similar copyright claims based on unprotectable elements.

117.   Cancelling/invalidating WAGI's purported Copyright is consistent with the rejection of the ten other WAGI Applications which were rejected as unoriginal.

118.   Attaching unused, not photographed, never built exterior elevations is insufficient to support an architectural copyright.

119.   Counterclaimants have been harmed and suffered damage and are continuing to be harmed and damaged by the continued registration of WAGI's purported Copyright because WAGI has relied upon the purported Copyright as a basis to sue Counterclaimants, causing Counterclaimants to incur disruption to their businesses and a significant investment of time, effort, and expense in this action, and causing disruption to Counterclaimants' business dealings with lenders and purchasers.

120.   Counterclaimants therefore respectfully request cancellation/invalidation of the Copyright.

### SECOND COUNTERCLAIM
**(Declaratory Relief: WAGI's Copyright Misuse)**

121.   Counterclaimants incorporate by reference the preceding paragraphs.

122.   By way of demanding a reuse fee, and by bringing this suit, WAGI illegally attempted to extend a purported monopoly granted to it under the Copyright Act beyond the scope of the Copyright by prohibiting use of standard designs for four-, five-, and six-plex row and townhomes and industry design elements contained within the Copyright which is unlikely to survive an Abstraction Filtration Comparison test.

123.    WAGI demanded a reuse fee despite no agreement that one be paid, then required insurance coverage and/or indemnity for potential liability in lieu of a reuse fee, then again reversed course requiring an exorbitant reuse fee, unjustified by the law or circumstances.

124.    WAGI demanded that Counterclaimants, a competitor in the home design industry, cease all use of the allegedly infringing work, despite the home designs at issue having been inspired, in part, by Lokal Communities' prior developments at Hyland Village and the Meadows in Colorado, as well as dictates of code sections, market demands, accessibility requirements, and more, and despite the Registration '599 including exterior elevations entirely different from any building/project offered by Counterclaimants, and despite that LOKAL's home designs are distinguishable, and despite that WAGI had been aware of Counterclaimants' intention to build additional properties, and despite Counterclaimants' indication that it believed no reuse fee or other fee was due.

125.    WAGI further misused the purported Copyright to notify Counterclaimants' lenders and has threatened to push Counterclaimants to notify all purchasers of LOKAL's properties that such purchasers may be liable for infringement if the purchaser chooses to sell their home, which no Court in this District has ever held before.  WAGI's attempts to monopolize a four-, five-, and six-plex for high density housing and attempts to extort damages by way of this claim is classic copyright misuse.

126.    WAGI further misused the purported Copyright, knowing ten out of eleven of its individual WAGI Applications were flatly and permanently rejected – indicating it

4902-6814-5174

has no exclusive rights to the Rowtown | Plan One, Rowtown | Plan Two, Rowtown |

Plan Three, Carriage Town | Plan One, and Carriage Town | Plan Two floorplans that it

asserts are similar to the "Henry," "Oliver," "Tayler," "Clark," and "Baxter" floorplans

created by Lokal.

127.    WAGI has overextended the truth of the underlying Copyright for the

purpose of precluding additional high-density housing by Defendants, contrary to public

policy.

128.    WAGI's actions, omissions and exaggerations have been intentional and

willful so the U.S. Copyright Office would issue a registration for the sole purpose of

litigation against Defendants.

129.    WAGI's counsel is well aware that the U.S. Copyright Office indicated to it

that Section 102 requires blueprints to show exterior elevations and interior layout, and

that the Copyright would not have been granted but for the submission of exterior

elevation – which is an elevation completely different from any used or built by either

party.

130.    On information and belief, this was to overcome the U.S. Copyright

Office's initial view of the deposit materials for the WAGI Applications were

unenforceable conceptual drawings, for which "the copyright owner cannot prevent a

third party from using that drawing to construct an actual building."  WAGI000977.

131.    On information and belief, WAGI was well aware that the U.S. Copyright

Office denied the request of its counsel to treat multiple floor plans as "alternate

configurations" of the WAGI Floorplans.  WAGI001381.

132.    WAGI knowingly, intentionally, and fraudulently omitted material facts and side-stepped the truth to the U.S. Copyright Office that the deposit materials submitted with the application for Registration '599 was not an architectural work because it was not a blueprint from which a building could be built and that the exterior elevation did not match any building structure in existence or to be built.

133.    Plaintiff's intent to secure an overreaching Copyright was done for the purpose of improperly asserting and expanding rights.

134.    Plaintiff's copyright misuse is contrary to public policy and for the purpose of monopolizing four-, five- and six-plex cluster townhome designs and to extort damages by way of this lawsuit.

135.    Counterclaimants request an order from this Court declaring that WAGI's purported Copyright is unenforceable under the doctrine of copyright misuse.

### THIRD COUNTERCLAIM
### (Declaratory Relief: Noninfringement)

136.    Counterclaimants incorporate by reference the preceding paragraphs.

137.    Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to alleged copyright infringement.

138.    The five LOKAL townhouse floorplans, namely "Henry," "Oliver," "Taylor," "Clark," and "Baxter" plans associated with the CVR and C&F projects differ significantly from the floorplans that WAGI had previously collaborated on with LOKAL in connection with the charette.  *See* Exs. A-B.

139.    There are numerous differences between the townhouse floorplans used at the CVR and C&F projects, and WAGI's floorplans as described in Paragraphs 37-44.

140.    For example, one of WAGI's floorplans includes a diagonal hallway, an arrangement that does not appear in any of townhouse floorplans used at the CVR or C&F projects.

141.    The five LOKAL Floorplans, namely "Henry," "Oliver," "Taylor," "Clark," and "Baxter" plans and plans associated with the CVR and C&F projects differ significantly from the WAGI Floorplans and the ten individual WAGI Applications deemed unregistrable as copyrights.

142.    The five LOKAL floorplans, namely "Henry," "Oliver," "Taylor," "Clark," and "Baxter" plans associated with the CVR and C&F projects differ significantly from the "Rowtowns and Carriage 5-Plex" visual works in the Copyright.

143.    Depictions of the arrangement of standard rooms (such as bedrooms, closets, bathrooms, a kitchen, a dining room, and a living room) in a limited space or floorplans are entitled to only thin copyright protection such that only virtually identical copying could constitute infringement.  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) ("There are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room, and study downstairs"); *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1324 (11th Cir. 2016) ("Customary styles and efficiency- or expectation-driven industry standards are not susceptible to copyright."); *Design Basics, LLC v. Lexington Homes, Inc. Acuity a Mut. Ins. Co.*, No. 14-CV-1102, 2016 WL 8116897, at *4 (E.D. Wis. Sept. 30, 2016) ("common sense dictates that there are only so many ways the rooms in a house can

66

be configured"), aff'd *sub nom*. *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d
1093 (7th Cir. 2017).

144.    Standard elements and standard arrangements of elements receive no
copyright protection.  *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1142 (10th Cir.
2016).

145.    Counterclaimants' activities, including the creation or use of the five
townhouse floorplans, namely "Henry," "Oliver," "Taylor," "Clark," and "Baxter," do not
infringe any copyright owned by WAGI.

146.    WAGI's Copyright should immediately be reviewed under the Abstraction
Filtration Comparison test.

147.    Counterclaimants request a declaration by the Court that
Counterclaimants have not infringed and do not infringe the Copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants seek the following relief:

a)    a declaration that Counterclaimants do not infringe U.S. Copyright
Registration VA2000346599 titled "Rowtowns and Carriage 5-Plex" including but not
limited to under the Abstraction Filtration Comparison test;

b)    a declaration of copyright misuse by WAGI under the Abstraction Filtration
Comparison test;

c)    a declaration of copyright misuse by WAGI for intentionally and improperly
asserted expanded rights to which it is not entitled;

d)      a determination of invalidation of WAGI's U.S. Copyright Registration VA2000346599 titled "Rowtowns and Carriage 5-Plex";

e)      a determination of unenforceability of WAGI's U.S. Copyright Registration VA2000346599 titled "Rowtowns and Carriage 5-Plex" under the doctrine of copyright misuse;

f)      judgment against WAGI and in favor of Counterclaimants;

g)      an award to Counterclaimants of their costs and attorneys' fees incurred in this action under 15 U.S.C. § 505;

h)      an injunction enjoining WAGI from misusing its Copyright to disrupt business dealings between Counterclaimants, its lenders and its purchasers and interfere with Counterclaimants' current and prospective contracts and economic advantage; and

i)      any further relief as the Court may deem just and proper.

## **JURY DEMAND**

Lokal Defendants hereby demand trial by jury on all issues.

68

DATED:  February 3, 2025.

SNELL & WILMER L.L.P.

*s/Byeongsook Seo*
Byeongsook Seo
Ellie Lockwood
Andrew S. Green
675 Fifteenth St., Suite 2500
Denver, Colorado 80202
Telephone: 303.634.2000
Facsimile: 303.634.2020
bseo@swlaw.com;
elockwood@swlaw.com;
asgreen@swlaw.com

Deborah Gubernick
600 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626
Telephone: 714.427.7000
Facsimile: 714.427.7700
dgubernick@swlaw.com

***ATTORNEYS FOR LOKAL COMMUNITIES, LLC,
LOKAL HOMES, LLC, AND L&L HOLDING
COMPANY, LLC***

4902-6814-5174

## CERTIFICATE OF SERVICE

This is to certify that on February 3, 2025, a true and correct copy of the above and foregoing **AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

| | |
|---|---|
| ***Attorneys for Woodley Architectural Group, Inc.*** | Louis K Bonham<br>Peter C. Schechter<br>OSHA BERGMAN WATANABE & BURTON, LLP<br>1100 Louisiana Street, Suite 4900<br>Houston, Texas 77002<br>Telephone: (713) 228-8600<br>Fax: (713) 228.8778<br>Email: bonham@obwb.com<br>Email: schechter@obwb.com |
| | and |
| | Marc Tabolsky<br>HICKS JOHNSON PLLC<br>700 Louisiana Street, Suite 2650<br>Houston, Texas 77002<br>Telephone: (713) 357-5150<br>Email: mtabolsky@hicksjohnson.com |
| ***Attorneys for Flagstar Bank, N.A.*** | Mark A. Thomas<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, Missouri 63105<br>Telephone: (314) 621-5070<br>Email: mathomas@atllp.com |
| | and |
| | Darren K. Sharp<br>ARMSTRONG TEASDALE LLP<br>2345 Grand Blvd., Suite 1500<br>Kansas City, Missouri 64108<br>Telephone: (816) 221-3420<br>Email: dsharp@atllp.com |

4902-6814-5174

**Attorneys for Western Alliance Bank**     Timothy P. Getzoff
Jeffrey R. Roeser
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: (303) 473-2700
Email: tgetzoff@hollandhart.com
Email: jrroeser@hollandhart.com


*/s/ AmyKovarsky*
for Snell & Wilmer L.L.P.

4902-6814-5174